THE STATE v. WILLARD, *Appellant.*

### DIVISION TWO.

**Criminal Law**: FALSE PRETENSES: STATUTE.    Where a merchant voluntarily credits a customer for goods and delivers possession without receiving any other promise from the customer than that he will pay for the same on a specified date, the giving in payment a false or bogus check at that time is not the offense of obtaining property by false pretenses and representations, prohibited by Revised Statutes, 1889, section 3826.

*Appeal from Jackson Criminal Court.*—HON. H. P. WHITE, Judge.

REVERSED.

*Hatch & Middlebrook* for appellant.

(1)  The indictment is bad.  *First.*  It fails to designate or describe in any way the false pretense, trick, fraud or bogus check or instrument.  *Second.*  It fails to designate who the accused intended to defraud, or against whom his fraudulent intent was directed. *Third.*  It violates the constitution of the state of Missouri by not sufficiently informing the accused of the nature of the accusation made against him.  *Fourth.* It is composed exclusively of "generic terms," inferences drawn from facts, but states no facts or particulars.  *Fifth.*  It is totally lacking in all essentials of a common-law indictment, both as to substance and form. (2)  The instruction in the nature of a demurer to the pleading and evidence, directing the jury to acquit the defendant, should have been given.  Under the testimony (eliminating that improperly admitted), the defendant should have been acquitted.

*John M. Wood*, Attorney General, for the State.

· (1)  The indictment follows the form prescribed by section 3826, Revised Statutes, and is sufficient. *State v. Fancher*, 71 Mo. 461; *State v. Connelly*, 73 Mo. ·235.  (2)  The evidence in this case clearly brings the ·case within the provisions of the section under which the indictment was drawn. *State v. Dennis*, 80 Mo. 587.  (3)  The instructions which were given by the court in this case, on the part of the state, are sustained · in *State v. Bayne*, 88 Mo. 604, and fully and fairly submitted all the issues presented by the evidence to the jury, and no error was committed in refusing instructions asked by defendant.

GANTT, P. J.—At the January term, 1890, of the Jackson county criminal court, the defendant, Charles F. Willard, was indicted in the following form:

"January Term, 1890.

"The grand jurors of the state of Missouri, in and for the body of the county of Jackson, upon their oath present that C. F. ·Willard, whose christian name in full is unknown to these jurors, late of the county .aforesaid, did, at the City of Kansas, in said county, on the third day of November, 1889, at the county of .Jackson, state aforesaid, with intent to cheat and defraud, did unlawfully and feloniously obtain from Karges & Cartwright, a copartnership composed of Julius J. Karges and George S. Cartwright, their money and property, to-wit:  One fur robe, of the value of $14, one pair of fur gloves, of the value of .$8.50 and one beaver cape, of the value of $20, of the goods and property of the said Julius J. Karges and George S. Cartwright, by means and by use of a cheat and fraud and trick and deception and false and fraud- .ulent representation and statement and false pretense

and confidence game and false and bogus check and instrument, contrary to the form of the statutes and against the peace and dignity of the state.

"HENRY M. WITHERS,

"Prosecuting Attorney."

Karges & Cartwright kept a general store at Thirteenth and Grand avenue, in Kansas City, in a portion of the city distant from the banks. Defendant and prosecuting witnesses had had previous dealings with each other. Two days before Thanksgiving, 1889, the defendant was in Karges & Cartwright's store, and while there one of the proprietors, at his request, laid aside the fur robe and the pair of fur gloves mentioned in the indictment. On Thanksgiving day the defendant was in the store and remarked it was cold, whereupon the proprietor told him he could take the gloves and robe that day; he would credit him till Saturday. He thereupon took these articles and they were charged to him. On Saturday he came in with a young lady, and looked at a fur cape, which he agreed to take, if it fit the lady. It did not fit, and was returned to the possession of the owners. All the witnesses agree that she nor defendant kept this cape, but it had been returned and was in the possession of its owners when this prosecution commenced. On Saturday, November 30, 1889, the defendant gave the firm his check for $42.50 on the National Bank of Commerce. Payment was refused. Thereupon the prosecution was commenced.

The court gave the following instructions for the state: "1. If you shall believe and find from the evidence that at the county of Jackson, state of Missouri, any time within three years next before the twenty-second day of January, 1890, the defendant, intending to cheat and defraud, obtained from the witness Cartwright the articles of personal property named in

the indictment, or any portion of them, of any value whatever, and shall further believe that he obtained the article or articles, by means and by use of a cheat or fraud or trick or deception or false and fraudulent representation or statement or false pretense or confidence game or false or bogus check or instrument, you will find the defendant guilty as charged, and assess his punishment at imprisonment in the state penitentiary for a term of years not less than two and not exceeding seven.

"2.   You will be careful to observe that the intent of the defendant is of the very essence of the offense charged. Consequently, although you may believe that the defendant drew a check upon a bank in which he had no account and kept no deposit, you cannot convict unless you further believe that in obtaining articles of personal property belonging to Karges & Cartwright, and named in the indictment, he, the defendant, intended to cheat and defraud. Specific proof as to the intent is not required. Whether the defendant did or did not intend to cheat and defraud is a matter for you to determine by fair inference from all the facts and circumstances proven.

"3.   You should wholly disregard the evidence as to transactions other than the one in which it is alleged that the goods specified in the indictment were obtained by the defendant, and you should disregard all evidence as to checks given by defendant, whether delivered to Karges & Cartwright or others, further than as such evidence relative to such transactions or checks may enable you to determine as to the intent of the defendant at the time of the transaction wherein he obtained the goods which constitute the basis of this prosecution.

"4.   If at the time of obtaining any article from Karges & Cartwright the defendant intended to cheat

and defraud, then the return of such goods to said Karges & Cartwright constitutes no defense in this cause."

The defendant asked the following instructions, which the court refused: "1. If the jury believe from the evidence that the defendant bought the robe and gloves mentioned in the indictment, and agreed to pay therefor on the following Saturday; that Karges & Cartwright in the ordinary course of business gave defendant credit until the following Saturday for said goods, and sold and delivered them to defendant without receiving any other promise or agreement from defendant except to pay for said goods on the following Saturday; that the cloak mentioned in the indictment was sold and delivered to the defendant conditioned that it fit and be satisfactory; that it was returned and did not fit and was not satisfactory, and Karges & Cartwright still have it, then you must acquit the defendant.

"2. If the jury believe from the evidence that, at the time Willard signed and delivered the check for $42.50 to Karges & Cartwright, he intended to place the money in the bank in time to pay said check when it would be presented for payment in the ordinary course of business, then the jury will acquit defendant.

"3. If the jury entertain a reasonable doubt as to the intention of defendant to cheat and defraud the complaining witnesses, Karges & Cartwright, at the time he procured the articles set out in the indictment, they will give the defendant the benefit of the doubt and acquit him.

"4. It is not incumbent on the defendant to prove himself innocent, but it is incumbent on the state to prove him guilty of the offense charged in the indictment beyond a reasonable doubt.

"5. The court instructs the jury that the check for

$25, given Karges & Cartwright by Willard, dated November 30, 1889, cannot be considered for any purpose in arriving at a verdict in this cause."

. It is very clear that the statute was enacted to punish those, and those only, who *obtain* or attempt to obtain from any other peron, his money, property or valuable thing, *by means* or by use of some one of the fraudulent devices enumerated in the act itself. The two essentials of the offense are, *first*, the obtaining or attempting to obtain the goods, or other valuable thing, and, *second*, accomplishing it, by some of the means denounced in the statute. R. S. 1889, sec. 3826.

Now, it must be conceded that Cartwright was not induced to part with his possession or property in the gloves and fur robe by means of the check. It stands upon his own evidence that he voluntarily extended credit to defendant from Thursday to Saturday, and delivered and charged the goods to defendant on the firm books, without receiving any other promise or agreement from defendant except to pay for them at that time.

The giving of the check on Saturday had nothing to do with obtaining these goods. They had already been delivered to defendant, and by no sort of fiction can the transaction of Saturday be made to relate back, and make an ordinary sale on a credit, obtained by no false pretense, or trick, or other "confidence game," a crime. It would be purely "*ex post facto.*"

The uncontradicted evidence as to the lady's cape shows that this was a conditional sale. The condition was that it should fit. It did not fit, and was returned, and was in the possession of the firm who sold it, when this prosecution was commenced. There never was an unconditional sale of the cape by which the title passed, but even as to this cape there is not a syllable of evi-

dence that goes to, show that the giving of the check was the fraudulent means used to obtain possession of it.

No representation was made at the time that the money was in the bank. No cunning was employed to induce the firm to take the check. Indeed, it seems to have been a voluntary credit. Had the conditional sale and check been used to obtain the possession, an entirely different case would have been made. But the return of the cape without any knowledge of the dishonor of the check effectually disproves the charge of obtaining the possession in this way. It is incredible if that was the purpose that she should have returned the cape to be refitted and made over, and this, after they must have known, the check would be presented for payment.

This view of the case renders it wholly unnecessary to discuss the constitutionality of the section. The defendant was entitled to the first instruction asked by him. But upon the whole case it appears to us the prosecution must fail upon the facts, admitting them all to be true, and the cause is reversed, and the defendant discharged. All concur.